IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| D'ANTHONY WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 5:17-cv-1096-TMP |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

## I.    Introduction

The plaintiff, D'Anthony Wilson, appeals from the decision of the Commissioner[1] of the Social Security Administration ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB"). Mr. Wilson timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g),

---

[1]    It appears from briefs filed by the Government in other Social Security cases and from news reports that there is neither a Commissioner nor an Acting Commissioner currently serving in the administration, but that the functions of the job still are being performed by Nancy A. Berryhill.

1383(c)(3). The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 13).

Mr. Wilson was 47 years old at the time of the Administrative Law Judge's ("ALJ") decision, and he has a high school education. (Tr. at 34). His past work experiences include employment as a construction laborer, painter, and paper machine operator. *Id.* Mr. Wilson claims that he became disabled on April 8, 2013, due to "chronic pain, back injury with 2 failed surgeries, anxiety, depression, high blood pressure, acid reflux and chronic low back and neck pain." (Tr. at 260).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, the claimant is not disabled and the evaluation stops. *Id.* If he is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends upon the medical

evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he will be found disabled without further consideration.  *Id.*  If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments.  20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the

claimant's age, education, and past work experience, in order to determine if he can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden of demonstrating that other jobs exist which the claimant can perform is on the Commissioner; and, once that burden is met, the claimant must prove his inability to perform those jobs in order to be found to be disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Mr. Wilson has not been under a disability within the meaning of the Social Security Act from the date of onset through the date of his decision. (Tr. at 36). He determined that Mr. Wilson had not engaged in substantial gainful activity since the alleged onset of his disability. (Tr. at 19). According to the ALJ, the plaintiff's degenerative disk disease of the lumbar spine, status post lumbar fusion, affective disorder, and anxiety disorder are considered "severe" based on the requirements set forth in the regulations. (Tr. at 19). He further determined that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 20). The ALJ did not find Mr. Wilson's allegations regarding the intensity, persistence, and limiting effects of his symptoms to be entirely

credible. (Tr. at 33-34). He determined that the plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations: he will be able to occasionally lift and/or carry 20 pounds, and to frequently lift and/or carry 10 pounds; he can stand and/or walk with normal breaks for six hours of an eight-hour day; he can sit with normal breaks for six hours of an eight-hour day; he has unlimited ability to push and/or pull, including the operation of hand and/or foot controls except for the lift and carry restrictions of 20/10 pounds; he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; he should not work on ladders, ropes, or scaffolds; he should avoid concentrated exposure to extreme cold, hazardous machinery, and unprotected heights; he should not work a heavy vibratory job; he can understand, remember, and carry out short, simple instructions and tasks; he can maintain attention and concentration for two-hour periods in an eight-hour day with customary breaks; he should have his own workstation; he can have occasional contact with the public, coworkers, and supervisors. (Tr. at 22).

According to the ALJ, Mr. Wilson is unable to perform any of his past relevant work. (Tr. at 34). He did find that the plaintiff is able to work as a garment folder, inspector, or hand packager. (Tr. at 36). The ALJ concluded his

findings by stating that Plaintiff was not disabled at any time from the alleged onset date through the date last insured.  (Tr. at 36).

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this court finds that

the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.  Discussion

Mr. Wilson alleges that the ALJ's decision should be reversed and remanded because the ALJ: (1) failed to consider whether Mr. Wilson met the criteria for Listing 1.02 regarding his joint pain; (2) failed to determine that he was disabled under Listing 12.04 regarding his depression; (3) failed to determine that he was disabled under Listing 12.06 regarding his anxiety; and (4) failed to properly credit his subjective pain testimony.[2]  (Doc. 9).  The Commissioner has replied that the ALJ followed the controlling law in evaluating the plaintiff's limitations and

---

[2]      In conjunction with his claim that the ALJ did not properly credit the plaintiff's allegations relating to pain, the plaintiff asserts that the ALJ erred in giving no weight to the opinion of his functional capacity assessed by  Dr. Aycock, a treating physician.  The claim relating to the weight given to Dr. Aycock's opinion will be addressed *infra* as a separate claim.

symptoms and their application to the listings and that he properly weighed the subjective complaints of pain in accordance with the governing Eleventh Circuit Court of Appeals' standards.  (Doc. 10).

## A.    Listings

Step three of the sequential evaluation process requires that the Commissioner determine whether a claimant meets or equals a disability described in the Listings.  *Davis v. Shalala*, 985 F.2d 528, 532 (11th Cir.1993).  The plaintiff bears the burden of showing that his condition meets or equals a Listing.  *Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir.1987)(per curiam).  To meet his burden of showing that his impairment meets a Listing, the plaintiff must manifest all of the specified medical criteria.  When an impairment includes only some of those criteria, it does not qualify, even if severe.  *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990).  It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience.  20 C.F.R. § 416.920(d).  A diagnosis alone, however, is insufficient to establish that a Listing has been met.  *Gibbs v.*

*Commissioner*, 2017 WL 1501082 *1 (April 27, 2017), citing 20 C.F.R. § 416.920(d).

### 1. Listing 1.02

The plaintiff has alleged that the ALJ erred in failing to evaluate whether Mr. Wilson's impairments met or equaled Listing 1.02, which applies to the major dysfunction of a joint. The Listing defines the musculoskeletal impairment as:

> 1.02 Major Dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylsis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and finding on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>   A. Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

First, it must be noted that the plaintiff does not point to any evidence in the record that supports a finding of the "[i]nvolvement of one major peripheral weight-bearing joint." Instead, the plaintiff argues that his lumbar disk problems cause pain to radiate down his legs, which "places a great limitation on his ambulatory ability." (Doc. 9, p. 15). The Listing, however, requires the "involvement" of a "weight-bearing joint," such as the hip, knee, or ankle, not just

pain radiating into the legs. There simply is no evidence of an impairment of the hips, knees, or ankles in this case. The court is not convinced that Listing 1.02 could apply in this case.

Further, even if there were evidence of a major dysfunction of a joint, the Commissioner correctly points out that Listing 1.02 applies only if Mr. Wilson is unable to "ambulate effectively." (Doc. 10, pp. 6-7). The definition of such ambulation is provided in 1.00B2b, which states: "Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." The provision goes on to explain that ambulation is generally deemed to be ineffective in instances where a person is unable to walk "without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Accordingly, courts have generally refused to apply Listing 1.02 unless a claimant is unable to walk without crutches, a walker, or two canes. *See, e.g., Keith v. Astrue*, Case. No. 3:11-cv-988-TRM, 2012 WL 3111889, at *5, (M.D. Ala. July 31, 2012) (finding that plaintiff had not demonstrated an inability to ambulate effectively where "physicians observed plaintiff walk normally (and without an assistive device)); *Baker v. Comm'r of Soc. Sec.*, 384 F.

App'x 893 (11th Cir. 2010) (affirming ALJ's unfavorable decision where the plaintiff needed a single cane but was able to walk effectively with the assistance of the device).

The record in this case is replete with references to Mr. Wilson's gait as normal or non-antalgic. (Tr. at 126,[3] 527, 596, 603, 614, 622). There is no evidence that Mr. Wilson requires an assistive device that limits the functioning of *both* arms in order to walk. The record provides substantial evidence to support the ALJ's failure to discuss Listing 1.02,[3] and the plaintiff's argument regarding a major joint dysfunction is without merit.

### 2. Listings 12.04 and 12.06

The plaintiff has alleged that the ALJ erred in failing to find that the plaintiff's impairments met or equaled Listing 12.04 regarding depressive disorders and Listing 12.06 regarding anxiety disorders. The Commissioner has asserted that the plaintiff failed to demonstrate that the ALJ erred in applying the Listings, and that the ALJ properly evaluated the evidence that plaintiff presented relating to his mental disorders. As with other impairments, a diagnosis of depression or anxiety

---

[3] Plaintiff relies upon the same medical record to support his claim that he meets Listing 1.02 because it assesses "lumbar facet joint syndrome." However, the treating doctor, at the same visit, noted that Mr. Wilson reported a 50 percent improvement in function (tr. at 127) and had a non-antalgic gait (tr. at 126).

alone, is not sufficient to demonstrate disability.  A finding of disability depends

upon the severity of the disorders.

Section 12.00 contains the Listings for mental disorders, and includes

affective disorders (Listing 12.04)[4] and anxiety-related disorders (Listing 12.06).[5]

---

[4]    **12.04 Affective Disorders**: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

    A. Medically documented persistence, either continuous or intermittent, of one of the following:

        1. Depressive syndrome characterized by at least four of the following:

            a. Anhedonia or pervasive loss of interest in almost all activities; or

            b. Appetite disturbance with change in weight; or

            c. Sleep disturbance; or

            d. Psychomotor agitation or retardation; or

            e. Decreased energy; or

            f. Feelings of guilt or worthlessness; or

            g. Difficulty concentrating or thinking; or

            h. Thoughts of suicide; or

            i. Hallucinations, delusions, or paranoid thinking; or

        2. Manic syndrome characterized by at least three of the following:

            a. Hyperactivity; or

            b. Pressure of speech; or

            c. Flight of ideas; or

            d. Inflated self-esteem; or

            e. Decreased need for sleep; or

            f. Easy distractibility; or

            g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

            h. Hallucinations, delusions or paranoid thinking;

    or

        3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently

characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

    3. Marked difficulties in maintaining concentration, persistence, or pace; or

    4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1. Repeated episodes of decompensation, each of extended duration; or

    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. § 404, subpart p, appendix 1 (Effective: December 12, 2007 to September 28, 2016).

[5] **12.06 Anxiety Related Disorders**: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A. Medically documented findings of at least one of the following:

    1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

        a. Motor tension; or

        b. Autonomic hyperactivity; or

        c. Apprehensive expectation; or

        d. Vigilance and scanning;

    or

    2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

    3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of

20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(A).  Listings 12.04 and 12.06 consist of: a statement describing the disorders addressed by the Listing; paragraph A criteria, which are a set of necessary medical findings; and paragraph B criteria, which list impairment-related functional limitations that are incompatible with the claimant's ability to do any gainful activity.  In addition, Listings 12.04 and 12.06 also include additional functional criteria, known as paragraph C criteria.  A claimant can meet one of these Listings only if "the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied."  *Id*. § 12.00(A).  In other words, the severity of the mental impairment

---

intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
4. Recurrent obsessions or compulsions which are a source of marked distress; or
5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

AND

B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

OR

C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. § 404, subpart p, appendix 1 (Effective: December 12, 2007 to September 28, 2016).

qualifies a claimant for benefits only when it meets the levels set forth in both paragraphs A and B or both A and C.

Plaintiff contends that his depression meets Listing 12.04. Paragraph A is met only where there exists "[m]edically documented persistence of" depression that is characterized by at least four defined characteristics. Similarly, the plaintiff asserts that his anxiety meets Listing 12.06, which requires that "anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms." The ALJ repeatedly noted that doctors consistently found that Mr. Wilson suffered only mild to moderate psychological distress and that his reports of severe distress were not supported by the medical records or by his scant and inconsistent treatment for any psychological disorder.

The plaintiff argues that he has met the requirement of paragraph A of Listing 12.04 by providing evidence of "[m]edically documented persistence, either continuous or intermittent, of ... [s]leep disturbance." The ALJ did not specifically discuss the paragraph A criteria; accordingly, the court assumes without deciding that the ALJ found that the plaintiff met the paragraph A requirements.[6] In addition to the paragraph A requirements, however, a claimant

---

[6] The court notes, however, that Dr. Telang's treatment notes from January to July

must also meet the requirements of paragraph B, or the even more stringent requirements of paragraph C.

The paragraph B criteria of Listings 12.04 and 12.06 require a claimant to have at least two of the following: marked restrictions in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *Id*. §§ 12.04(B), 12.06(B). "Marked" means "more than moderate but less than extreme." Marked restriction occurs when the degree of limitation seriously interferes with a claimant's ability to function "independently, appropriately, effectively, and on a sustained basis." *Id*. § 12.00(C); see 20 C.F.R. § 416.920a(c)(4) (describing a five-point scale used to rate the degree of limitation: none, mild, moderate, marked, and extreme). "Episodes of decompensation" are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(C)(4). To meet the criterion of "repeated" episodes

2016 consistently reported that the plaintiff "Denies anxiety, depression, sleeping disorder, and insomnia." (Tr. at 104, 110, 119, and 126).

of decompensation of "extended duration," a claimant must have three episodes within one year, or an average of one every four months, each lasting for at least two weeks. *Id*.

In this case there is no evidence, and plaintiff does not argue, that he experienced any episodes of decompensation. Moreover, the plaintiff's own descriptions of his activities do not support that he has "marked" difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. The ALJ noted that Mr. Wilson drives himself, shops at a mall, prepares food, and takes care of his personal hygiene. While he does not like to be in crowds, he gets along with his family and goes to church regularly. (Tr. at 20-21). The ALJ is not required to make such findings based solely on a doctor's notation that, as discussed *infra*, is not supported by the plaintiff's own reported activity level and by the medical records.[7] Dr. Wilkerson's notes simply do not portray Mr. Wilson as suffering from

---

[7] Plaintiff argues that the severity of his impairments is supported by the findings of Dr. Wilkerson, who agreed to "support a request for additional 2 [months] period of short term disability" based upon his anxiety and depressive symptoms. (Tr. at 492). However, Dr. Wilkerson's treatment note from that date also records that Mr. Wilson presented with good grooming and hygiene, normal psychomotor activity, a full range of affect, fluent speech, no hallucinations, tangential thought processing, normal thought content, and no suicidal or homicidal ideations. (Tr. at 491). The psychiatrist also noted that Mr. Wilson was not "psychotic, pressured, disorganized, grandiose, etc." (Tr. at 492).

"marked" problems in activities of daily living, social relationships, or with concentration, persistence, or pace. Moreover, plaintiff was evaluated by Dr. John Haney in October 2015, at which time Mr. Wilson reported that he had not been receiving psychological treatment for more than a year, after Dr. Wilkerson's practice closed. During the October 2015 evaluation, Mr. Wilson was on time, talkative, ambulated without assistance (although slowly), said he had "mild difficulties falling asleep," and denied having anxiety attacks and "social anxiety." (Tr. at 507-508). Dr. Haney described him as "calm and composed" with a "good" mood. (Tr. at 508). Following testing, Dr. Haney reported that Mr. Wilson had a "mild level of depression."

Taking Dr. Wilkerson's treatment notes to January 2013 and Dr. Haney's evaluation in October 2015, there simply is not medical evidence showing that the plaintiff suffered "marked" limitations in the areas required by the listing for affective disorders. Accordingly, the requirements of paragraph B are not met under either Listing 12.04 or 12.06.

The paragraph C criteria of Listing 12.04 requires a medically documented history of the alleged mental disorder "of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with

symptoms or signs currently attenuated by medication or psychosocial support" as well as one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process resulting in "such marginal adjustment" that it is predicted that "even a minimal increase in mental demands or change in the environment" would cause decompensation; or (3) a current history of at least one year's "inability to function outside a highly supportive living arrangement," with an indication that this arrangement needs to continue. *Id*. § 12.04(C). Listing 12.06(C) requires that the claimant's impairment results in a complete inability to function outside the area of his or her home. *Id*. § 12.06(C).

In this case, plaintiff does not argue that the paragraph C criteria have been met. The plaintiff does not offer any evidence of repeated episodes of decompensation or of an inability to function outside of a highly supportive living arrangement or outside of his home. Because the plaintiff has failed to demonstrate that the ALJ improperly applied Listing 12.04 or 12.06, the ALJ's step-three findings do not provide any basis for remand.

## B. Pain Standard

Plaintiff asserts that the ALJ's evaluation of his subjective complaints of pain was improper. Mr. Wilson argues that the ALJ failed to adequately credit his

testimony regarding his pain, his wife's statement regarding his pain, and the medical records from Dr. Aycock that support his testimony regarding pain. The Commissioner asserts that the ALJ properly evaluated the medical evidence and the Plaintiff's testimony regarding the level of his pain and the limitations the pain would impose.

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul.

96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection" which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted). An ALJ has "wide latitude as a finder of fact" to evaluate credibility, but that evaluation must rest on a "clear articulation" of the relevant facts and the governing law. *See Owens v. Heckler*, 748 F.2d 1511, 1514 (11th Cir. 1984).

In this case, the ALJ found that Plaintiff met the first prong of the Eleventh Circuit Court of Appeals's pain standard, but he determined that the medical evidence failed to support the contention that the impairments are of such severity that they could reasonably be expected to give rise to the disabling pain and other limitations alleged by Plaintiff. (Tr. at 33-34). The ALJ specifically addressed

Plaintiff's allegations of pain in his opinion, and he provided explicit and acceptable reasons for rejecting Plaintiff's testimony regarding the severity of his pain. The ALJ noted that the plaintiff was able to dress himself, except that he needed help with tying his shoelaces; drives himself; shaves and showers independently; and feeds himself. (Tr. at 23). Although the ALJ recognized that Mr. Wilson testified that he could not sit for more than 15 to 20 minutes, he noted that the physical therapist had "observed much longer sitting just days earlier." *Id.* He noted that the plaintiff had testified that he had been actively seeking employment for sit/stand work, but that he also said he could not do work alternating sitting and standing. *Id.* While the plaintiff describes his surgeries for the degenerative disk disease as "failures," the surgeon's records indicate that Mr. Wilson reported that his symptoms were "completely" resolved. (Tr. at 24).

The ALJ further stated that the complaints of disabling pain were contradicted by the records of the doctor who performed the two surgeries, Dr. Gavham. In December of 2013, several months after the alleged date of onset, Dr. Gavham suggested that Mr. Wilson join a gym and get back to a routine. (Tr. at 440). The doctor released Mr. Wilson to light work. *Id.* Mr. Wilson did not return to work, and did not receive treatment for pain management until more than a year

later, explaining that he had been treating the pain with BC powder. (Tr. at 26). The ALJ also recited that the plaintiff failed to follow-up with Dr. Gavham as directed and had settled his worker's compensation claim in January 2015 for $125,000, which included a waiver of any claim for future vocational rehabilitation or future medical benefits. (Tr. at 29). The also notes that Dr. Aycock reported in a treatment note dated September 30, 2015, that Mr. Wilson suffered a chemical burn to his face when a pump sprayer exploded while Mr. Wilson "was trying to clean some paint off of some concrete…." (Tr. at 519). This activity plainly indicated a condition inconsistent with disability. In short, the ALJ pointed to specific facts from the treatment records and the plaintiff's own testimony that do not support the allegations regarding disabling pain.

The objective medical and other evidence supports the ALJ's conclusion that Plaintiff's conditions did not cause disabling limitations and instead shows that he could perform a reduced range of light work. Because the ALJ clearly articulated "explicit and adequate reasons" for discrediting the Mr. Wilson's allegations of completely disabling pain, the plaintiff's claim is without merit.

### C. Treating Physician's Assessment

The claimant also asserts that the Commissioner failed to give proper weight to the functional capacity evaluation completed by a physical therapist and adopted by Dr. Aycock.  (Tr. at 635-45).  The ALJ gave Dr. Aycock's opinion no weight, stating that the physician's statements involved a determination of Mr. Wilson's ability to work that is reserved to the Commissioner.  (Tr. at 32).

Under prevailing law, a treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 1997) (internal quotations omitted).  The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source.  *See* 20 C.F.R.  §§ 404.1527(d), 416.927(d).  "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) ... was conclusory or inconsistent with the

doctor's own medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" exists where the opinion was contradicted by other notations in the physician's own record).

In this case, the opinion, which is nothing but a checklist that adopts the report of a physical therapist, is inconsistent with the other records of treating physicians and with the plaintiff's own testimony about his daily activities.   (Tr. at 32)  The ALJ specifically noted that the doctor practices at the place where Mr. Wilson's wife works, that Mr. Wilson's visits to Dr. Aycock were "months apart" and did not demonstrate that the doctor saw the plaintiff in any apparent distress, experiencing disabling pain, or exhibiting disabling functional limitations.  (*Id.*) The ALJ further noted that Dr. Aycock did not rely upon plaintiff's other medical records or laboratory findings.  Instead, the ALJ based his assessment on the fact that Dr. Aycock's evaluation was a "check form" and was "unsupported by any objective medical evidence." (Tr. at 33).

It is well established that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors

"are not medical opinions, .. . but are, instead, opinions on issues reserved to the Commissioner;" thus the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The court instead looks to the doctors' evaluations of the claimant's condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, because it is the ALJ who bears the responsibility of assessing a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1546(c).

In this case, the ALJ gave no weight to Dr. Aycock's opinions regarding Mr. Wilson's capacity to do work. The ALJ clearly articulated "good cause" for discrediting Dr. Aycock's disability assessment; therefore, the ALJ did not err in failing to give the treating physician's opinion more weight. Throughout Dr. Aycock's treatment notes, there is only an indication of "chronic low back pain," but no assessment of the severity of the pain or any treatment of it. While the Functional Capacity Assessment done by Complete Physical Therapy in February 2016 reported that Mr. Wilson could occasionally bend and stoop, crawl, kneel,

and balance.  It reported that he could use his hands for grasping and manipulation frequently or continuously.  Although the physical therapist opined that Mr. Wilson probably could not work an eight-hour day due to limitations on his ability to sit and stand, the report noted that he was able to sit for up to forty-five minutes.  (Tr. at 645).  The objective medical and other evidence supports the ALJ's conclusion that Mr. Wilson's conditions did not cause disabling limitations and instead shows that he could perform a reduced range of light work.

## IV.     Conclusion

Upon review of the administrative record, and considering all of Mr. Wilson's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and is in accord with the applicable law; accordingly, the decision is AFFIRMED.

DONE this 18th day of September, 2018.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE